## Henrico Lumber Company, Inc., *v.* United States Spruce Lumber Company, Appellant.

*Vendor—Vendee—Sales—Lumber—Contract of sale—Breach.*

In an action to recover damages for failure to accept certain shipments of lumber under a contract of sale, the case is for the jury and a verdict for the plaintiff will be sustained, where the evidence established that the defendant had failed to fulfil its obligation to purchase the material mentioned in the contract; that the plaintiff had sold the lumber after due notice to the defendant, and there was sufficient evidence that the verdict represented the difference between the price mentioned in the contract and that obtainable in the market at the time of the breach.

Argued October 13, 1924.   Appeal, No. 15, Oct. T., 1924, by defendant, from judgment of C. P. No. 4, Phila. Co., June T., 1922, No. 7506, on verdict for the plaintiff in the case of Henrico Lumber Company, Inc., a Corporation, v. United States Spruce Lumber Company, a Corporation.   Before ORLADY, P. J., HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Assumpsit on breach of contract.   Before AUDENRIED, P. J.

The facts are stated in the following opinion of the court below:

The plaintiff sued to recover damages for the defend-ant's refusal to accept and pay for certain lumber that the latter had agreed to purchase from it.

The affidavit of defense set up, first, that the defendant had accepted and paid for all the lumber that its contract with the plaintiff required it to take, and that the lumber to which the plaintiff's claim refers was not embraced by the contract; second, that the price fixed by the contract for such lumber as the defendant agreed to purchase was the price that might prevail in the Philadelphia market when it was delivered and not ninety dollars per thousand as averred in the statement of claim; and, third, that the price at which the plaintiff sold the lumber which the defendant would not accept was under the reasonable market price.

Upon the issues raised by these defenses the jury found for the plaintiff and returned a verdict against the defendant for $1,350.75, which amount included the plaintiff's alleged loss by reason of the defendant's breach of contract, $1,256.20, with interest thereon.

The defendant now asks for judgment in its favor, non obstante veredicto, or for a new trial.

These motions are based, first, on the ground that the plaintiff failed to show that the defendant was bound to accept more lumber than it actually took and paid for; and, second, on the ground that the date as of which the plaintiff's damages were calculated by the jury was an improper one.

It may be observed with respect to the second of these points that, while, if well taken, it might warrant a new trial, it would not justify the entry of judgment for the defendant, if it defaulted in the performance of its contract. For a breach of contract by the defendant the plaintiff would be entitled to recover nominal damages although no actual loss were proved.

1. The following facts were duly established at the trial by uncontradicted testimony. Prior to May 6,

1920, the plaintiff had contracted with a party named Newton to purchase all the lumber that he might manufacture at two mills in the vicinity of Ravensworth, Virginia. Negotiations between plaintiff and defendant in regard to the product of the mills resulted in the sending by the latter to the former of a communication, dated May 6, 1920, which reads as follows:

"Please ship the following: Total delivery to be completed by not later than Dec. 31, 1920.

| | |
|---|---|
| 100,000 ft. 4-4 #2 Common & Better Mixed Oak—8 to 16 ft. with proper proportion of 16 ft. at | 100.00 |
| 75,000 ft. 4-4 #2 Common & Better Poplar —8 to 16 ft. with proper proportion of 16 ft. | 90.00 |

NOTE: It is understood that the above lumber is to be cut and shipped when in shipping shape on shipping instructions to be given later. It is further understood that the lumber is to be the run of the log and that none of the upper grade is to be taken out. It is also understood the above figures are estimates as to the quantity of lumber which will be cut at the mill seat now operating and that the total of such production will fill the contracts even though it may be slightly less than the quantities above stated. Lumber to be inspected by National Hardwood Lumber Inspector, you paying one-half of the charges and we paying one-half, as usual.

> Consignee
> Destination
> Delivery
> Price.

fob cars mill, freight allowed Philadelphia, Pa. rate 2%—10 days from date of shipment.

Send invoices IN DUPLICATE to us at PHILADELPHIA, PA., promptly with our order No.

thereon. Hardwoods to be inspected according to the rules and regulations of the National Hardwood Lumber Association."

This order was accepted by the plaintiff. Six months later, however, it was orally agreed between the representatives of the parties thereto that their original contract should be modified. The jury found that the time for its performance was extended for ninety days, ("so that delivery could be made next spring"), and that the price to be paid for the oak lumber to which it related was reduced to ninety dollars per thousand. In its other terms the contract was not altered. In March, 1921, the plaintiff notified the defendant that the lumber referred to by their agreement was ready for delivery and asked for shipping instructions. This request was not immediately complied with, but in June of that year the defendant called for the shipment of sundry carloads of lumber that its inspector had examined and, in compliance with the defendant's directions the plaintiff shipped 74,524 feet of the poplar lumber at the Ravensworth Mills and 19,457 feet of the oak lumber there. The lumber thus shipped by the plaintiff was received by the defendant or its nominees and accepted and paid for by the defendant. The oral contract of these parties thus became enforceable under section 4 of the Sales Act. No further lumber was ever called for by the the defendant under the contract, although the plaintiff made numerous requests that it would have the oak lumber that remained at Ravensworth examined by an inspector of the National Hardwood Lumber Association, and, that it would give instructions for its shipment.

It is here that the first point seriously pressed by the defendant in support of its motions arises.

It is contended that under its contract it was bound to take and pay for no more lumber than was, on March 31, 1921, in shipping shape; that the burden of showing that more than 19,457 feet of oak lumber of the grade and sizes called for by the contract had been sawn and

was in condition to ship on that date; and that the plaintiff's evidence failed to show that more than 19,457 feet of such lumber was then at Ravensworth ready for shipment.

The plaintiff insists that, on the date just referred to it had on hand at the mills, cut and in shape to ship, 21,558 feet of oak lumber, in addition to what was shipped on the defendant's order in the month of June following.

That such a quantity of oak lumber had been cut, sawn and piled, the defendant does not dispute, but it claims that the oak lumber that it did not take was too green for shipment, and that, therefore, it was not bound to give shipping instructions covering it.

While the evidence on the issue thus raised was not very strong on either side, there was enough, we think, to take it to the jury. Such being the case the entry of judgment for the defendant non obstante veredicto is impossible. We are not convinced that the jury's finding on the question of fact was erroneous. On consideration of the testimony of the witnesses, we have reached the conclusion that the verdict should not be set aside as being against the weight of the evidence.

2. By the terms of the contract, as ascertained by the jury, the defendant undertook to accept and pay for such oak lumber, (up to the amount of 100,000 feet), as might be produced at the Ravensworth Mills by March 31, 1921, and pass the inspection of the inspector of the National Hardwood Lumber Association. Nothing being specified as to when it must do so, the law implies that the defendant was to perform its part under the contract within a reasonable time after the date just mentioned. It was, therefore, bound within a reasonable time after March 31, 1921, to cause the oak lumber then piled at Ravensworth to be duly inspected and to furnish shipping instructions to the plaintiff for the lumber that it had agreed to buy.

If in these matters the defendant unduly delayed, the plaintiff might declare that the contract was broken and resort to such remedies as the law gives the seller against a defaulting buyer. But it was not bound to exercise its legal right. It could waive strict performance on the part of the defendant. This is the course that the plaintiff chose to pursue.

Whatever may have been the proper time within which the defendant should have taken the lumber that it agreed to buy, the plaintiff must be regarded as having waived its doing so prior to June, 1921. In that month it shipped on the defendant's orders all the poplar lumber that their contract covered and 19,457 feet of the oak lumber. It appears that the immediate acceptance of the remainder of the latter was not even then insisted on.

The plaintiff's subsequent requests for shipping directions indicate quite clearly that it deemed the contract still operative and binding on the defendant. That the defendant still expected to obtain further deliveries is indicated by its sending in January, 1922, an inspector to ascertain how much, if any, lumber in shipping shape was then in the piles at Ravensworth; and while the defendant failed to give further shipping instructions, it never plainly asserted that it would not, sooner or later, call for additional deliveries.

The price of lumber had fallen off greatly. The defendant dealt in lumber. It was then not to its interest to call for the delivery of lumber which it could sell only at a price under that fixed by the contract. But the market might improve and prices again rise to figures higher than that of the contract. These considerations will explain the defendant's attitude toward the plaintiff. The latter appears to have dealt rather gently with the defendant.

The plaintiff's forbearance, however, did not deprive it of its right to insist that the defendant should carry out the contract. Its laxity in dealing with the defend-

ant did, however, prevent a sudden insistence on performance, and made it necessary, before the contract might be deemed broken, that the defendant be warned that delay in performance beyond a fixed time would be a breach and acted on as such.

Patience ceasing to be a virtue, written notice was given defendant under date of March 3, 1922, that unless assured by March 8th of the latter's intention to carry out the contract, the plaintiff would conclude that it did not mean to do so. This communication failed to elicit a definite statement of the defendant's position, and the attorneys of the plaintiff on May 24, 1922, informed the defendant through its attorney that an offer for the lumber in question had been received and that "if word be not received in reference to this matter on or before Tuesday next" the lumber would be sold for the defendant's account. By that letter a time for performance (by the giving of shipping instructions) was definitely fixed. This period was subsequently extended to June 5, 1922.

There can be no doubt that the defendant's failure by the date last mentioned to give instructions for the shipment by the plaintiff of the 21,558 feet of oak lumber which the jury found was piled at Ravensworth March 31, 1921, in shipping shape, and which, therefore, the defendant was obligated to accept and pay for, constituted a breach of the contract between them, and that the time of the breach was June 5, 1922, which was the date when the seller first definitely ascertained the buyer's refusal to accept.

The plaintiff on June 12, 1922, sold the oak lumber that the defendant had not taken. This sale was made at a price which the defendant was informed on May 24, 1924, had been offered for it. No better offer for the lumber was brought by it to the plaintiff's attention, nor, according to the plaintiff, could a better price be obtained.

Under clause 3 of section 64 of the Sales Act the measure of damages in the present case is the difference between the contract price of the lumber and its market or current price at the time of the defendant's refusal to accept.

The trial judge charged the jury that "If the defendant was in default,—if the defendant failed to accept and pay for lumber which it had agreed to buy, and which the plaintiff on the thirty-first of March, 1921, was ready to deliver, then, after due notice, which seems to have been given, because the matter is set out in letters which are in evidence here, the plaintiff had a right to sell the lumber which the defendant ought to have accepted and paid for, at the market rate, that is, for its reasonable market value, and would have a claim against the defendant for any loss that its sale may have entailed upon it. You, if you get this far along in the case, must determine the question what was the reasonable market value of such lumber as that covered by the plaintiff's contract, in June, 1922." Again, the jurors were instructed, "If there was a default by the defendant in the acceptance of what it had agreed to buy, it will be necessary for you to determine, first, what was the price at which the lumber was to be paid for by the defendant, and, second, what was the reasonable price in the market at the time these 21,558 feet of lumber were sold by the plaintiff."

The court is of the opinion that the trial judge's instructions to the jury were correct and afford no ground for setting aside the verdict: Girard v. Taggert, 5 S. & R. 19; McCombs v. McKennan, 2 W. & S. 216; Delaplaine v. Philadelphia Ammonia Co., 2 Pa. Superior Ct. 555.

For the reasons above outlined the motion for judgment non obstante veredicto is dismissed and a new trial is refused.

Verdict for plaintiff in the sum of $1,350.75 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence, the charge of the court, answers to points and refusal of defendant's motion for judgment non obstante veredicto.

*William S. Furst,* for appellant.

*J. Wesley McWilliams,* and with him *Charles S. Wesley,* for appellee.

PER CURIAM, December 13, 1924:

The disputed facts in this case have been so satisfactorily disposed of in the opinion filed by the trial judge, that it is not necessary to repeat them. After a careful review of appellant's contention, we are satisfied with the correctness of the result reached by the court below.

For the reasons given, the judgment is affirmed.